■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v TYRONE FULTON, Respondent.—Appeal by the People from an order of the Supreme Court, Kings County (Moskowitz, J.), entered January 23, 1992, which, after a hearing, granted in part those branches of the defendant's omnibus motion which were to suppress physical evidence and a statement made by him to law enforcement authorities.

Ordered that the order is reversed, on the law, those branches of the defendant's motion which were to suppress physical evidence and a statement made by him to law enforcement authorities is denied, and the matter is remitted to the Supreme Court, Kings County, for further proceedings on the indictment.

At the suppression hearing, the arresting officer testified that during the evening of June 30, 1991, while on motor patrol, he heard radio transmissions originating from another police vehicle that a certain car was being sought concerning a reported shooting and menacing with a gun. The car was described as being a blue, four-door Toyota Camry, license plate 3JJ541, with the words "Spoiled Rotten" written on the

side. The perpetrator was also identified as a man named "Tyrone" who had "dreads" (i.e., a dreadlock hairstyle). According to the officer, he returned to the precinct later that night and located the original complaint report, from which he gained further details as to the car and person sought, including that "Tyrone" was described, inter alia, as a Jamaican male black with a mustache, beard, and "dreads" who lived at 671 Decatur Street, Brooklyn, and was wearing a black tank top, blue hat and certain jewelry. He also was described as carrying a black, semi-automatic .45 pistol. The complainant had charged that this individual, earlier that day, fired a shot through a second floor apartment window and had threatened the complainant before. However, the record contains no proof that the complainant stated, or that the officer read or heard, that the shot had come from the pistol described by the complainant.

The officer then resumed patrol and drove to the area of 671 Decatur Street. He parked nearby and waited. A few minutes later he observed a Toyota Camry precisely matching the description he had received (except that the license number was 3JJ841) being driven down the street by a black male wearing dreadlocks; the officer followed and pulled it over. He approached and asked the driver, the defendant herein, for his name. When the defendant replied that his name was "Tyrone Fulton", the officer told him that someone had reported that he had a gun and asked him to get out of the car. The defendant exited the car, and moved towards the rear of the car.

The officer looked in the passenger compartment and saw what looked like a .45 caliber pistol between the gearshift console and the driver's seat. The officer seized the gun and arrested and handcuffed the defendant. The officer then searched the trunk under circumstances which were disputed at the hearing, and found a sawed-off rifle. The rifle jammed as the officer was trying to eject the bullets and the defendant stated that there were four rounds inside. It was later determined that the pistol was an imitation .45 caliber automatic, which was actually a BB gun, and the defendant was not charged with possession of a weapon based upon the BB gun. The hearing court suppressed the rifle and the statement.

The stop of the defendant's car and his subsequent arrest were legal. The car and driver matched the descriptions the arresting officer had both heard and read, and provided the basis for his actions (see, People v De Bour, 40 NY2d 210, 223; People v Myers, 172 AD2d 632; People v Green, 168 AD2d 457).

The factual dispute concerning the search of the trunk centered on whether the officer had the defendant's permission to search it. The hearing court concluded that no consent had been given, a determination it based on its evaluation of the testimony given by the officer and the defendant, which we find no reason to disturb here (see, People v Prochilo, 41 NY2d 759; People v Carter, 166 AD2d 540).

Nevertheless, we disagree with the court that suppression was warranted. Neither the arresting officer nor his partners were under any threat to their safety by the time the trunk was searched (see, People v Torres, 74 NY2d 224, 227; People v Belton, 55 NY2d 49, 52-53). However, probable cause to search the entire vehicle, including the trunk, existed under the so-called "automobile exception" to the requirement for a search warrant. Where the police have "validly arrested an occupant of an automobile, and they have reason to believe that the car may contain evidence related to the crime for which the occupant was arrested or that a weapon may be discovered or a means of escape thwarted, they may contemporaneously search the passenger compartment, including any containers found therein" (People v Belton, supra, at 55). This rule applies with equal force to trunks and other baggage compartments, locked or not (see, People v Ellis, 62 NY2d 393, 398; People v Langen, 60 NY2d 170, cert denied 465 US 1028). We find unpersuasive the defendant's argument that because the officer found a gun which matched the one described in the complaint report, he no longer had any reason to continue the search. Because a .45 pistol had not been described as the weapon actually used in the shooting, and given the nature of the crimes for which the defendant was being arrested, a thorough search for weapons was warranted (see, People v Brown, 116 AD2d 727, 729; People v Paone, 103 AD2d 1012, 1013). Accordingly, the gun seized from the trunk was legally seized and is admissible in evidence. Since the defendant's statement was clearly a spontaneous response to the seizure, the statement is admissible as well (see, People v Hoffman, 161 AD2d 666, 667). Rosenblatt, J. P., Ritter, Copertino and Pizzuto, JJ., concur.