[676 NYS2d 552]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JERMAL SIMPSON, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JAMES ABREU, Respondent.

First Department, July 23, 1998

---

**APPEARANCES OF COUNSEL**

*John F. Carroll, Jr.,* of counsel (*Joseph N. Ferdenzi* on the brief; *Robert T. Johnson, District Attorney* of Bronx County, attorney), for appellant.

*Donald A. Harwood (Courtney C. Hunt* on the brief), for Jermal Simpson, respondent.

*Dominic J. Sichenzia* for James Abreu, respondent.

**OPINION OF THE COURT**

SULLIVAN, J. P.

The People appeal from an order suppressing a gun seized from the locked trunk of an automobile occupied by defendants. At issue is whether, in the circumstances presented, there was probable cause to believe that one of the car's occupants possessed a gun and, if so, whether the "automobile exception" justified the police officers' warrantless search of the vehicle, including the locked trunk compartment from which the gun was recovered.

The following facts were adduced at the *Mapp* hearing. On February 24, 1994, Police Officer Rosado, assigned to foot patrol at 166th Street and Boston Road in The Bronx, was approached by an elderly van driver, who informed him that he had been involved in a "fender bender" with a green Honda Accord occupied by three young black men. According to the van driver, the three men in the Accord cursed at him and words were exchanged. As the Accord drove away, one of the occupants took out a gun and pointed it at him.

This confrontation had taken place within 200 or 300 feet of Officer Rosado, who had, coincidentally, "thirty seconds to a minute" earlier, observed the green Honda Accord, the last car to pass him before the van driver's approach, proceed west on 166th Street. Rosado further noted that the Accord turned right on Franklin Avenue in a northerly direction. The van driver confirmed that, indeed, the green Accord had proceeded west on 166th Street.

Officer Rosado, with the van driver still present, radioed, unsuccessfully, for an anti-crime unit's assistance. Ap-

proximately two minutes later, however, two officers on motor patrol, Molloy and Meagher, who had monitored Rosado's radio transmission, arrived at the location where Rosado and the van driver were waiting for assistance. Rosado conveyed to both Molloy and Meagher all of the information provided by the van driver, including a description of the Accord and a partial description (three numbers and/or letters) of the Accord's license plate, as well as its occupants.

Assuming that Rosado would hold the complainant in the event an arrest were made, Molloy and Meagher proceeded north and, on reaching Claremont Parkway, travelled east on Claremont where they observed a green Honda turn off Third Avenue onto Claremont Parkway in a westerly direction. Not only was the Honda the same make and car, as described, it was within 10 blocks of the underlying incident, its license plate matched the partial information provided and it had the same number of occupants as reported. Only four or five minutes had elapsed since the officers' conversation with Rosado.

Meagher turned the patrol car around to pursue the Honda while Molloy radioed for backup assistance. The Accord made a right turn onto Park Avenue and proceeded for three or four blocks when it suddenly stopped, three doors opened and the occupants attempted to exit the car. Having exited from the police vehicle, Molloy and Meagher, guns drawn, ordered the Honda's occupants to lie on the ground—defendant Simpson, the driver, on the driver's side and the Honda's other two occupants on the passenger side. By now, other officers were at the scene and, with the situation under control, those officers who had drawn their weapons holstered them. One officer asked, "Where's the gun?", prompting Simpson and the two other occupants to ask, "What gun?" When one of the officers asked "Whose car is this?", Simpson responded that the car was his and told the officers, "Go ahead, search the car. Check it. We have nothing." Molloy searched the car's interior and the immediate vicinity, looking under other parked cars. Finding no gun, Molloy asked for the keys to open the trunk. Simpson responded, "Yeah, go ahead." With the keys, Molloy attempted to open the trunk but was unable to do so. He asked Simpson how to open the trunk; Simpson pulled the latch by the driver's seat and the trunk door popped open. When Molloy looked into the trunk, he discovered a gun wedged between the spare tire and wall of the trunk. Only Simpson and one of the passengers, defendant Abreu, were named in the indictment.

There is no indication as to the disposition of the charges against the other passenger.

Fully crediting the testimony of Officers Rosado and Molloy, the hearing court found the officers' actions to be reasonable but concluded that the People had failed to sustain their "heavy" burden of showing a voluntary consent to the search. Accordingly, it suppressed the gun. We reverse.

In concentrating on the issue of consent and whether the burden of proving the same had been met, the hearing court ignored the crucial question in the case—whether there was probable cause to arrest the driver and the occupants of the Honda and to believe that a gun was secreted somewhere within the vehicle. Consent was never an issue, as the People consistently argued that probable cause justified the police conduct.

In *People v Belton* (55 NY2d 49, 55), the Court of Appeals held that when the "police have validly arrested an occupant of an automobile, and they have reason to believe that the car may contain evidence related to the crime for which the occupant was arrested or that a weapon may be discovered or a means of escape thwarted, they may contemporaneously search the passenger compartment, including any containers found therein." This rule, which would not control in other circumstances where probable cause exists, applies to property kept in an automobile, including the trunk (*see, People v Vasquez*, 195 AD2d 297; *see also, People v Fulton*, 189 AD2d 778, *lv denied* 81 NY2d 1014), and dispenses with the warrant requirement with respect to a search of the car. The rule, known as the automobile exception, requires "both probable cause to search the automobile generally and a nexus between the probable cause to search and the crime for which the arrest is being made." (*People v Langen*, 60 NY2d 170, 181, *cert denied* 465 US 1028; *see, Pennsylvania v Labron*, 518 US 938.) Thus, the crucial issue is whether probable cause existed to arrest the driver and occupants for the earlier incident in which the driver of the van had been menaced by a gun-wielding occupant of a green Honda.

"If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offen[s]e has been committed, it is sufficient" to provide probable cause (*Stacey v Emery*, 97 US 642, 645; *see also, Carroll v United States*, 267 US 132, 161). "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and

practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." (*Brinegar v United States*, 338 US 160, 175.) Probable cause does not require proof beyond a reasonable doubt, merely a reasonable ground for belief.

In this regard, courts, in making probable cause determinations, accord a high degree of trustworthiness to crime victims or witnesses with first-hand knowledge, who are subject to prosecution if the report is fabricated (*People v Hicks*, 38 NY2d 90). That the victim was unavailable to make an identification and Rosado failed to ascertain the victim's name before he left the scene do not detract from the force of the information he imparted since Rosado "had the opportunity to assess his credibility on the basis of his demeanor and the accuracy of his information." (*People v Kadan*, 195 AD2d 174, 178, *lv denied* 83 NY2d 854.) Nor does the victim's disappearance militate against a finding of probable cause. Like many citizens, he may have preferred not to become involved in the criminal justice system or believed his further presence to be unnecessary. Certainly, Officer Rosado, who looked for the victim after the arrest was made, as well as Molloy and Meagher, reasonably believed that the victim would be a willing complainant in an arrest and prosecution. No doubt the failure to ascertain the victim's identity was due to the haste with which the officers were acting in order to apprehend the occupants of the Honda.

In any event, the victim's disappearance could not detract from the body of information he conveyed, and which was partially confirmed, that constituted probable cause to believe that there was a gun present inside the Honda. When Molloy and Meagher, only minutes after speaking to Rosado, spotted, in the same general vicinity, a vehicle that matched the described make and color and, in part, the license number, of the car involved in the earlier incident, they were justified in taking its occupants, three black males, as reported, into custody. Thus, in this fast-paced street encounter, the prompt report by the van driver, a crime victim, to Officer Rosado "in a face-to-face encounter" (*People v Brown*, 232 AD2d 168, *lv denied* 89 NY2d 940), combined with the officer's own corroborating observations, all of which was communicated to Officers Molloy and Meagher, and further combined with the latter officers' own corroborating observation, justified the search of the car and its trunk in an effort to recover the gun.

Accordingly, the order of the Supreme Court, Bronx County, (Lawrence Bernstein, J.), entered on or about May 22, 1996,

granting defendants' motions to suppress physical evidence, should be reversed, on the law and the facts, the motions denied and the matter remanded for further proceedings. The appeal from the order, same court and Justice, entered on or about July 31, 1996, should be dismissed as academic in view of the foregoing.

NARDELLI, WILLIAMS and ANDRIAS, JJ., concur.

Order, Supreme Court, Bronx County, entered on or about May 22, 1996, reversed, on the law and the facts, the defendants' motions to suppress physical evidence denied and the matter remanded for further proceedings. Appeal from order, same court and Justice, entered on or about July 31, 1996, dismissed as academic in view of the foregoing.