■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE BAEZ, Appellant. [804 NYS2d 316]—

Judgment, Supreme Court, New York County (John E.H. Stackhouse, J.), rendered October 1, 1999, convicting defendant, after a nonjury trial, of two counts of criminal possession of a controlled substance in the third degree and one count of criminal possession of a controlled substance in the seventh degree, and sentencing him, as a second felony offender, to concurrent terms of $7^{1}/_{2}$ to 15 years and one year, respectively, unanimously affirmed. Judgment, same court (Brenda Soloff, J.), rendered November 22, 1999, convicting defendant, upon his plea of guilty, of criminal sale of a controlled substance in the second degree, and sentencing him, as a second felony offender, to $6^{1}/_{2}$ years to life, with the sentence to run concurrently with the sentence imposed under the October 1, 1999 conviction, unanimously affirmed. Order, same court (Marcy L. Kahn, J.), entered on or about February 13, 2004, which denied defendant's motion to vacate his October 1, 1999 conviction, unanimously affirmed.

On March 12, 1997, an undercover police officer approached defendant and another man (later identified as Santana) to inquire about purchasing heroin. Defendant informed the undercover of the "brand" name that was being used for heroin ("heavy roller"), and directed the undercover to a man across the street. When the undercover asked the man across the street (later identified as Hires) to sell him some "heavy roller," Hires said his stash had run out. Hires then walked over to defendant and Santana and spoke to them. After this conversation, Santana walked over to a purple van parked in the parking lot of a nearby White Castle restaurant, entered the van, and emerged with a brown paper bag, which he handed over to Hires. Hires then walked back to the undercover, and sold him a glassine envelope of heroin from the bag.

After the above transaction, the undercover sent a radio transmission to the backup team, telling them that a "positive buy" had occurred at a given location, describing defendant and Santana, and stating that the drugs apparently had been stored in a purple van in the parking lot of the White Castle restaurant.

Upon arriving at the scene, the backup team detained defendant and Santana, who were placed under arrest after the undercover positively identified them as the men to whom he had spoken about purchasing heroin. Hires was also arrested, and the brown paper bag from which he made the sale (which he discarded just before being arrested) was found to contain 31 glassine envelopes of heroin.

A postarrest search of defendant's person yielded, among other items, car keys and a remote car-lock operator. When the latter device was activated, it unlocked the purple van in the White Castle parking lot, from which the undercover had seen Santana emerge with the brown paper bag. The police then searched the van, and discovered 11 glassine envelopes of heroin inside.

Insofar as relevant to this appeal, Indictment No. 2336/97 (the 1997 indictment) charged defendant with two counts of criminal possession of a controlled substance in the third degree. One count was based on the heroin found in the brown paper bag, and the other count was based on the heroin found inside the van. Prior to trial, defendant moved to suppress, in relevant part, the undercover's identification of him at the scene, as well as the evidence yielded by the search of his person incident to the arrest (i.e., the car keys and the remote car-lock operator). This aspect of the suppression motion was denied, and, after a bench trial, defendant was convicted of both counts of criminal possession of a controlled substance in the third degree.

On appeal from the judgment of conviction rendered under the 1997 indictment, defendant's principal argument is that his motion to suppress should have been granted, to the extent indicated above, on the ground that the police witness at the suppression hearing (a member of the backup team) failed to testify to the contents of the undercover's radio-transmitted description of defendant that provided the basis for his initial detention. Defendant made no such argument at the suppression hearing, however, and, therefore, the point is unpreserved for appellate review (*see People v Faller*, 19 AD3d 138, 139 [2005]; *People v Alston*, 9 AD3d 268, 269 [2004], *lv denied* 3 NY3d 703 [2004]; *People v Santana*, 235 AD2d 220 [1997], *lv denied* 89 NY2d 1100 [1997]). We decline to review defendant's unpreserved contention in the interest of justice.

Having considered defendant's further arguments that his convictions under the 1997 indictment are not supported by sufficient evidence, and are against the weight of the evidence, we find such arguments unavailing. Insofar as defendant argues that his sentence was excessive, we perceive no abuse of sentencing discretion.

In 2003, defendant, represented by new counsel, made a CPL 440.10 application to vacate his convictions under the 1997 indictment. Defendant argued that he had received ineffective assistance of counsel in that his trial counsel failed to move to suppress the heroin found in the purple van, a vehicle registered in defendant's wife's name. By order dated February 13, 2004, Supreme Court denied defendant's CPL 440.10 application, and his appeal from that order has been consolidated with the direct appeal from the underlying judgment of conviction.

We affirm the denial of the application to vacate the convictions under the 1997 indictment. Defendant's trial attorney's failure to move to suppress the drugs found in the van did not constitute ineffective assistance of counsel, since such a motion would not have had any merit, notwithstanding that no warrant had been issued for a search of the van. Under the automobile exception to the warrant requirement, police may conduct a warrantless search of a vehicle where they have probable cause to believe that the vehicle contains evidence or contraband, and there is a nexus between the arrest and the probable cause for the search (*see e.g. People v Galak*, 81 NY2d 463, 467 [1993]). Manifestly, both of these requirements were satisfied here. The police who searched the van had probable cause to believe it contained heroin, since the undercover had reported to them that the purple van in the White Castle parking lot (from which Santana had obtained the brown paper bag) appeared to be the source of the heroin he purchased (*see Pennsylvania v Labron*, 518 US 938, 940 [1996] [probable cause justified warrantless searches of vehicles where police "had seen respondent Labron put drugs in the trunk of the car they searched and had seen respondent Kilgore act in ways that suggested he had drugs in his truck"]; *People v Langen*, 60 NY2d 170, 181-182 [1983], *cert denied* 465 US 1028 [1984] [upon arresting defendant for drug possession, "the police had probable cause to believe that contraband related to that crime was located somewhere in the truck," and, therefore, "they could properly search the entire truck" for such contraband without a warrant]).[1] Further, there clearly was a nexus between defendant's arrest and the probable cause for the search of the van for additional contraband,

---

1. (*See also People v Faines*, 297 AD2d 590, 595 [2002] ["at the moment the police saw and recovered the marijuana in defendant's possession, there clearly was reason to believe that the automobile might contain other drugs, and, therefore, the police were justified in searching the car pursuant to the automobile exception to the warrant requirement"] [internal quotation marks and citations omitted], *lv denied* 99 NY2d 558 [2002]; *People v Simpson*, 244 AD2d 87, 91 [1998, Sullivan, J.] [police had probable cause to conduct warrantless search of car for gun, based on report by civilian that an occupant of

since defendant was being arrested for his connection to the drugs in the brown paper bag that apparently had been taken from the van.

Defendant argues that the automobile exception to the warrant requirement—which is based in large part on the mobility of vehicles (*see Galak*, 81 NY2d at 467)—was rendered inapplicable to the subject van by the seizure of his keys. We disagree. The seizure of defendant's keys did not necessarily render the van immobile, since the police had no way of knowing whether anyone else had keys to it. Although defendant now argues that the police should have "secur[ed] and guard[ed] the vehicle while a warrant was quickly obtained," he does not cite any case holding that such a requirement exists, nor does he cite any case supporting his contention that the impoundment of the van shortly after his arrest rendered the automobile exception inapplicable. Indeed, the United States Supreme Court, observing that the automobile exception is based not only on the mobility of vehicles, but also (as the Court of Appeals has recognized [*see People v Galak*, 81 NY2d at 467]) on "the individual's reduced expectation of privacy in an automobile, owing to its pervasive regulation," has rejected the contention that the automobile exception's applicability depends on the presence of any exigency beyond the vehicle's being "readily mobile" (*see Pennsylvania v Labron*, 518 US at 940). Notably, in reversing the Pennsylvania Supreme Court's decision in *Labron*, the United States Supreme Court rejected the Pennsylvania court's view that the automobile exception did not apply in that case because "the police had time to secure a warrant" (*id.* at 939). Trial counsel's failure to make the same erroneous argument in this case did not deprive defendant of "meaningful representation" (*People v Baldi*, 54 NY2d 137, 147 [1981]).[2]

Finally, also before us is defendant's appeal from the judgment of conviction based on his plea of guilty to Indictment No. 8098/98 (the 1998 indictment). Defendant entered his guilty plea to the 1998 indictment in consideration of a promise that he would receive a sentence to run concurrently with the

---

a car of the same make and color, with a consistent license plate number, had pointed a gun at him], *appeal withdrawn* 92 NY2d 947 [1998].)

2. We would add that, even if defendant's ineffective assistance argument had any merit, it would warrant, at most, vacating only one of the two counts of criminal possession of a controlled substance in the third degree of which he was convicted, namely, the count based on the drugs found in the van. This is because the drugs found in the van (which defendant now argues his trial counsel should have sought to suppress) were not necessary to the conviction on the count based on the drugs found in the brown paper bag, which Hires discarded outside the van.

sentence previously imposed under the 1997 indictment. On appeal from the conviction under the 1998 indictment, defendant's sole argument is that, to the extent his conviction under the 1997 indictment is reversed, he is entitled to withdraw his guilty plea to the 1998 indictment (*see People v Pichardo*, 1 NY3d 126 [2003]). Since we are affirming defendant's conviction under the 1997 indictment, his conviction under the 1998 indictment is also affirmed. Concur—Tom, J.P., Andrias, Saxe, Friedman and Nardelli, JJ.