# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
April 10, 2012 Session

## STATE OF TENNESSEE v. ROBERT PRUITT

**Appeal from the Criminal Court for Shelby County**
**No. 09-00842    Lee V. Coffee, Judge**

**No. W2010-02269-CCA-R3-CD  - Filed March 6, 2013**

Defendant was convicted of possession of hydrocodone with intent to sell, a felony, possession of a firearm during the commission of a dangerous felony, a Class D felony, and possession of marijuana, a Class A misdemeanor. He received a total effective sentence of eight years. On appeal, the defendant challenges the sufficiency of the convicting evidence, the trial court's denial of his motion to suppress, and numerous evidentiary rulings. The defendant also claims that the trial court erred by failing to find mitigating factors and by sentencing him for a Class C felony with respect to his conviction for possession of hydrocodone with intent to sell or distribute, when the crime at issue was in fact a Class D felony. After review, we conclude that the trial court committed no reversible error with respect to the defendant's convictions. However, the trial court erroneously sentenced the defendant with respect to at least one of his offenses. Consequently, we remand the case to the trial court for re-sentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part, Reversed in Part; Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN AND JEFFERY S. BIVINS, JJ., joined.

Jake Erwin and Terry Hensley, Memphis, Tennessee, for the appellant, Robert Pruitt.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Kate Edmands and Jose Leon, Assistant District Attorneys General; for the appellee, State of Tennessee.

## OPINION

**FACTS AND PROCEDURAL HISTORY**

Shortly before midnight on July 22, 2008, patrol officers initiated a traffic stop of the defendant's vehicle due to expired license tags. As the vehicles were pulling over, one police officer saw the defendant place an object into the center consol between the two seats. As they approached the defendant's vehicle, the police officers smelled marijuana. The officers saw a decal for a shooting range on the back of the defendant's car and became concerned that he might have a weapon. One officer asked the defendant to exit his vehicle, where he appeared unsteady on his feet and "glassy eyed."

The police officers proceeded to search the defendant's vehicle and found a small bag of marijuana in the center consol of the car. The defendant advised them that he had a handgun in the glove box, and officers discovered a loaded .40 caliber handgun as well as more than $2000 in cash in that location. The officers discovered more than one hundred Lortab pills in a bag in the back seat, along with a set of digital scales covered in marijuana residue.

On February 5, 2009, a Shelby County grand jury indicted the defendant for unlawful possession of hydrocodone with intent to sell in violation of Tennessee Code Annotated section 39-17-417, unlawful possession of hydrocodone with intent to deliver in violation of Tennessee Code Annotated section 39-17-417, unlawful possession of marijuana in violation of Tennessee Code Annotated section 39-17-418, and possession of a firearm during the commission of a dangerous felony in violation of Tennessee Code Annotated section 39-17-1324(a). Prior to trial, the defendant filed a motion to suppress evidence on the grounds that the police had illegally searched his vehicle. The trial court denied this motion on March 25, 2010. On May 24, 2010, the defendant pled guilty to possession of marijuana and was tried on the remaining charges. The central issue at the defendant's trial was whether he was a drug dealer or simply a drug user. On May 27, 2010, the jury returned a verdict finding the defendant guilty of the remaining counts.

At his sentencing hearing on July 23, 2010, the trial court merged counts I and II concerning the sale and delivery of hydrocodone and sentenced the defendant to serve four years on the merged count. The trial court sentenced the defendant to a concurrent eleven months, twenty-nine days for possession of marijuana. The trial court sentenced the defendant to a consecutive four years on the firearm charge.[1] The defendant filed a motion

_____

[1] Both the defendant and the State erroneously claim in their briefs before this court that the defendant was sentenced to three years on the firearm charge, a mandatory minimum sentence provided for
(continued...)

for new trial on August 25, 2010, which was denied on September 23, 2010. The defendant filed a notice of appeal on October 22, 2010. We proceed to review his claims.

## ANALYSIS

The defendant raises numerous challenges to his convictions and sentences. He claims that the evidence is insufficient to support each of his convictions. He claims that the trial court erred by denying his motion to suppress. He claims that the trial court erred by permitting one of the defendant's arresting officers to testify as an expert. He claims that the trial court erred by allowing the State to impeach the defendant with a conviction that occurred while the defendant was still a juvenile. He claims that the trial court erred by permitting the defendant to be cross-examined concerning the "street value" of the pills found in his possession. He claims that the trial court erred by sentencing him to four years for possession of a controlled substance with intent to sell or distribute as a Class C felony, when his offense was in fact a Class D felony. Finally, the defendant claims that the trial court erred by not finding any mitigating factors to be present at sentencing and by sentencing him to serve four years.

We agree that the trial court erred by permitting the defendant to be cross-examined concerning his juvenile record. However, we find that error to be harmless under the circumstances of this case. We reject the defendant's remaining challenges to his convictions. The State concedes error with respect to the defendant's sentencing; specifically, the State concedes that the trial court erred by sentencing the defendant on his conviction for merged Counts I and II as if it were a Class C felony, when it should in fact have been considered a Class D felony in light of the type and quantity of drugs at issue. We conclude that the defendant's conviction for merged Counts I and II was a Class D felony, but we discern no other error with respect to the defendant's sentencing. We remand the case for appropriate re-sentencing.

## I.

The defendant challenges the sufficiency of the evidence to support each of his convictions. We review such claims under familiar standards. As our supreme court recently

---

[1](...continued)
by statute, *see* T.C.A. § 39-17-1324(g)(1). However, the judgment sheets have been included in the record on appeal and clearly state that the defendant in fact received a four-year sentence on this count (Count IV). Consequently, the defendant was in fact sentenced to a total effective sentence of eight years. As we are remanding this case for re-sentencing , the parties and/or the trial court also should address the issue of the defendant's sentence on Count IV.

explained:

> Appellate courts evaluating the sufficiency of the convicting evidence must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Because a guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, on appeal a defendant bears the burden of showing why the evidence is insufficient to support the conviction. *State v. Parker*, 350 S.W.3d 883, 903 (Tenn. 2011). This Court affords the State the strongest legitimate view of the evidence presented at trial and the reasonable and legitimate inferences that may be drawn from the evidence. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). "The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). This Court neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury. *Bland*, 958 S.W.2d at 659. Circumstantial and direct evidence are reviewed under the same standard of review. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt. *Id.* at 381.

*State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

The defendant in this case was convicted of selling and delivering hydrocodone in violation of Tennessee Code Annotated section 39-17-417, which provides: "It is an offense for a defendant to knowingly . . . [d]eliver a controlled substance . . . [or] [s]ell a controlled substance. . . ." T.C.A. § 39-17-417(a) (2008). The defendant was also convicted of possession of marijuana in violation of Tennessee Code Annotated section 39-17-418, which provides: "It is an offense for a person to knowingly possess . . . a controlled substance, unless the substance was obtained directly from, or pursuant to, a valid prescription. . . ." T.C.A. § 39-17-418. Finally, the defendant was convicted of possessing a firearm during the commission of a dangerous felony in violation of Tennessee Code Annotated section 39-17-1324(a), which provides: "It is an offense to possess a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony." T.C.A. § 39-17-1324(a). "Dangerous felony" has been defined to include: "A felony involving the sale, manufacture, distribution or possession with intent to sell, manufacture or distribute a

-4-

controlled substance or controlled substance." T.C.A. § 39-17-1324(i)(1)(K) (Supp. 2007). The petitioner's act of possessing hydrocodone with intent to sell or deliver was used as his qualifying felony under this statute.

The defendant argues that the amount of cash and the amount of drugs discovered in his vehicle were the only evidence concerning his intent to sell or distribute the drugs at issue. The defendant directs this court's attention to his own contrary testimony concerning his intent at trial, in which he claimed to be a mere drug user who became addicted to Lortab after suffering an injury at work. The defendant testified that he personally took as many as six pills per day. The defendant further testified that he did not sell drugs and that all of the pills discovered in his car were for his own personal use.

However, it is well established that a jury may infer a defendant's intent to sell solely from the quantity of drugs discovered. *See*, e.g. *State v. Cedric Golden*, No. W2005-02743-CCA-R3-CD (Tenn. Crim. App. Aug. 4, 2006). Moreover, state law expressly provides: "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." T.C.A. § 39-17-419. His testimony notwithstanding, the jury apparently drew just such an inference against the defendant. In light of the more than one hundred pills that were discovered in the defendant's possession, it was permissible for the jury to do so. This Court will not substitute its own inferences for those drawn by the jury. *See, e.g., State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

In addition, law enforcement witnesses testified that the defendant was found in possession of electronic scales that tested positive for marijuana residue as well as $2,421 in cash, arranged in two $1000 bundles and one bundle of $421. The defendant's possession of these items was certainly inconsistent with his claim to be a casual drug user. The record does not support the defendant's claim that the evidence is insufficient to support his convictions.

## II.

The defendant claims that the trial court erred by denying his motion to suppress. We review a trial court's decision concerning a motion to suppress under the standard established in *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). *See, e.g, State v. Brotherton*, 323 S.W.3d 866 (Tenn. 2010); *R. D. S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008). With respect to a trial court's factual findings, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge" and "[t]he party prevailing in the trial court is entitled to the strongest legitimate view

of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Odom*, 928 S.W.2d at 23. A trial court's factual findings will be upheld so long as the evidence does not preponderate against those findings. *See id.* During our review of these findings, we may consider proof submitted both at the suppression hearing and at the defendant's trial. *See State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998). "[O]ur review of a trial court's application of law to the facts is conducted under a de novo standard of review." *R. D. S.*, 245 S.W.3d at 362.

Both the federal and state constitutions contain provisions protecting individuals from unreasonable searches and seizures. *See* U.S. CONST. AMEND. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."); TENN. CONST, Art. 1, Sec. 7 ("[T]he people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures."). A warrantless search or seizure of a defendant's property is presumed to be unreasonable—and any resulting evidence may be subject to suppression under the well-known exclusionary rule—unless the State demonstrates that the search or seizure at issue was conducted pursuant to one of the narrowly-defined exceptions to the warrant requirement. *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000).

One of these exceptions is the so-called "automobile exception." As the Tennessee Supreme Court has recently explained:

> The "automobile exception" to the warrant requirement permits an officer to search an automobile if the officer has probable cause to believe that the automobile contains contraband. *Carroll v. United States*, 267 U.S. 132, 149, 45 S. Ct. 280, 69 L. Ed. 543, T.D. 3686 . . . (1925). The rationale for the automobile exception is two-fold. *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S. Ct. 2485, 135 L. Ed. 2d 1031 (1996); *California v. Carney*, 471 U.S. 386, 392-93, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985). First, it is often impractical for officers to obtain search warrants in light of the inherent mobility of automobiles. *Carney*, 471 U.S. at 393. Second, individuals have a reduced expectation of privacy in their automobiles. *Id.* If the officer has probable cause to believe that the automobile contains contraband, the officer may either seize the automobile and then obtain a warrant or search the automobile immediately. *Chambers v. Maroney*, 399 U.S. 42, 52, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970). "Given probable cause to search, either course is reasonable under the Fourth Amendment." *Id.*

*State v. Saine*, 297 S.W.3d 199, 207 (Tenn. 2009). Neither the federal nor the state constitution requires the existence of exigent circumstances for the automobile exception to

apply. The State urges that the police officers had the right to search the defendant's vehicle on the night in question pursuant to the automobile exception.

The record reflects that one police officer testified that he saw the defendant place something in the center consol of his vehicle while pulling over for the lawful traffic stop. Multiple police officers testified that they smelled the strong odor of marijuana emanating from the defendant's vehicle. When removed from the vehicle, the defendant appeared glassy-eyed and unsteady on his feet. These facts sufficed to provide the police officers with probable cause to search the defendant's vehicle for marijuana.

The defendant contends that the amount of marijuana discovered in the vehicle, 1.6 grams, was too small to have created an odor that could have been detected from outside of his vehicle. However, the trial court heard all of the testimony on this issue and resolved this credibility issue against the defendant.[2] The trial court found that multiple police officers consistently testified that they could detect the distinctive odor of marijuana from outside the defendant's vehicle. The trial court expressly found that these witnesses were credible. This court will not revisit the trial court's credibility determination on appeal. The defendant is not entitled to relief on his claim that the trial court erred by denying his motion to suppress.

**III.**

The defendant claims that the trial court abused its discretion by permitting a police officer to testify as an expert witness on the drug trade. "Reviewing courts will not reverse a decision regarding the admission or exclusion of expert testimony unless the trial court has abused its discretion." *State v. Scott*, 275 S.W.3d 395, 404 (Tenn. 2009). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Id.* The admissibility of expert testimony is generally governed by Rules 702 and 703 of the Tennessee Rules of Evidence. Rule 702 provides: "If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Tenn. R. Evid. 702. Rule 703 provides that the facts and data underlying an expert's opinion need not themselves be admissible as evidence, provided they are sufficiently reliable (*i.e.* they are "of a type reasonably relied upon by experts in the

---

[2] There was some speculation by law enforcement officers—based on their experience and the fact that a large amount of cash and digital scales covered in marijuana residue were discovered in the defendant's vehicle—that he had been carrying and had only recently sold a very large quantity of marijuana.

particular field in forming opinions or inferences upon the subject."). Tenn. R. Evid. 703.

In this case, Lieutenant McCord of the City of Memphis Police Department was qualified by the trial court as an expert in drug recognition and narcotics. Prior to being qualified, Lieutenant McCord testified that he had worked in law enforcement for over twenty years, had received specialized drug training and training in drug interdiction, had interviewed numerous drug dealers and users, and had testified in court numerous times. Lieutenant McCord testified that he had been qualified as an expert in federal court. Lieutenant McCord testified that "all" of his training was focused on distinguishing between drug dealers and drug users and that accurately making this distinction was of paramount concern to a narcotics detective. On cross-examination, Lieutenant McCord testified that there was no such thing as a profile or checklist from which a person could determine who was or was not a drug dealer. The defendant objected to Lieutenant McCord being qualified as an expert because his testimony would relate to an ultimate issue in the trial and because the jury was readily capable of drawing its own conclusions based on the proof. The trial court overruled the objection.

This Court has reviewed on numerous occasions the issue of whether a police officer may give expert testimony concerning whether a given quantity of drugs was possessed for resale or for personal use. We have consistently held that a properly trained and qualified police officer may provide such expert testimony. *See, e.g., State v. Carey*, 914 S.W.2d 93, 96 (Tenn. Crim. App. 1995); *State v. Daniel Potin*, No. W2005-01100-CCA-R3-CD (Tenn. Crim. App. at Jackson, June 7, 2006) (permitting officer to testify as an expert regarding how crack cocaine is consumed and manufactured); *State v. Samuel L. Giddens*, No. M2002-00163-CCA-R3-CD (Tenn. Crim. App., at Nashville, Nov. 15, 2004) (permitting agents to testify to factors that commonly distinguish one who possesses drugs for the purpose of resale from one who possesses drugs for personal use). We discern no error in the trial court's decision to permit Lieutenant McCord to testify concerning the same subject in this case.

The defendant claims that the trial court exhibited bias in its ruling below, as it ruled against the defendant prior to hearing argument from the State and "immediately went into the case law and evidentiary rules that he had clearly prepared in anticipation to rebut any of defense counsel's arguments on qualifications." We find this issue to be without merit. The issue of improper judicial bias is properly raised in a motion to recuse, not thrown in the midst of a claim of concerning the qualifications of an expert witness. Moreover, this court has repeatedly held that "[a]dverse rulings by a trial court are not usually sufficient grounds to establish bias." *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). That the trial court had researched the issue of a police officer's potential qualification as an expert witness and was prepared in advance to intelligently discuss and rule on the matter does not

suffice to establish unlawful judicial bias. *See id.* ("To disqualify, prejudice must be of a personal character, directed at the litigant, must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.")(quoting *State ex rel. Wesolich v. Goeke*, 794 S. W. 2d 692, 697 (Mo App. 1990)). The defendant is not entitled to relief on his claim that the trial court erred by permitting Officer McCord to testify as an expert.

## IV.

The defendant claims that the trial court erred by permitting the State to cross-examine him concerning a conviction that occurred when he was a juvenile. The State concedes error, and we agree. However, we do not believe that the trial court's mistake constitutes reversible error on the facts of this case.

"We review a trial court's ruling on the admissibility of prior convictions for impeachment purposes under an abuse of discretion standard." *State v. Waller*, 118 S.W.3d 368, 371 (Tenn. 2003). "A trial court abuses its discretion only when it applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." *Id.* (internal quotations omitted). Juvenile adjudications are admissible for impeachment purposes only under a very limited set of circumstances. *See* Tenn. R. Evid. 609(d) ("Evidence of juvenile adjudications is generally not admissible. . . ."). Those circumstances do not include the direct impeachment of an accused taking the stand in his own defense. *See id.*

In this case, the defendant took the stand in his own defense during the trial, and during his direct examination he indicated that he had received a GED. On cross-examination, the State questioned the defendant extensively concerning why he had not finished high school. The transcript reads in pertinent part:

Q: Why didn't you finish high school?
A: Why didn't I? I believe when I came along it was like getting ready to change into uniforms and then I believe I had like just a little incident in school, so I just decided I was ready to get out of high school and try to get into the work field or start some things in my life, so I just obtained my GED.
Q: And as a result of this incident, were you kicked out of school?
A: No, ma'am.
Q: What was the incident?
A: It was like a juvenile offense thing. Do I need to elaborate on that?
Q: What was the offense?
A: Oh, okay.

At this point counsel held a sidebar, and the defendant objected on the grounds that the defendant's juvenile offense was not admissible for impeachment purposes. The prosecutor responded that she was not trying to impeach the defendant. The trial court overruled the objection on the grounds that "[i]t's something he brought up." The questioning continued in pertinent part:

> Q: And what was the incident, Mr. Pruit?
> A: Basically, just being at the wrong place at the wrong time with some guys and I got into some trouble as a juvenile. Then as a result, I just decided to leave school.
> Q: Okay, but you're still not answering my question. What was the incident?
> A: The incident, it was labeled as an aggravated robbery or something like that.
> Q: Well, as a result of being involved in this aggravated robbery, did you get your GED right away?
> A: Yes, ma'am.

The prosecutor's assertion to the contrary notwithstanding, the State concedes, and we agree, that the prosecutor's question eliciting this testimony served no purpose other than as an attempt to impeach the defendant with his juvenile conviction. The impeachment of the defendant with his juvenile conviction was a plain violation of Tennessee Rule of Evidence 609(d), and it was contrary to logic for the trial court to permit the prosecutor's line of questioning to continue after the objection had been interposed. The trial court abused its discretion by permitting the prosecutor to pursue this line of questioning.

However, we conclude that the trial court's error was harmless upon this record. The improper impeachment of a defendant with a prior conviction is subject to harmless error analysis. *See Waller*, 118 S.W.3d at 374; *State v. Galmore*, 994 S.W.2d 120, 125 (Tenn. 1999). In order to result in reversal, a defendant must establish that the trial court's error "more probably than not affected the judgment to the defendant's prejudice." *Galmore*, 994 S.W.2d at 125; *see also* Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b). "The greater the amount of evidence of guilt, the heavier the burden on the defendant to demonstrate that a non-constitutional error involving a substantial right more probably than not affected the outcome of the trial." *State v. Rodriguez*, 254 S.W.3d 361, 372 (Tenn. 2008). "[T]he crucial consideration is what impact the error may reasonably be taken to have had on the jury's decision-making." *Id.*

Before this court, the defendant advances no argument concerning any potential prejudice posed by the trial court's error. Reviewing the record as a whole, we do not believe

that the jury's decision concerning whether the defendant was a drug-dealer or merely a drug user was impacted in any meaningful way by the erroneous introduction of evidence concerning the possible aggravated robbery that he committed when he was a juvenile. The State presented overwhelming evidence that the defendant was a drug-dealer. Law enforcement witnesses testified that defendant was found in possession of over one hundred and thirty Lortab pills, consisting of two different dosages, each of which was contained in a separate plastic baggie. Law enforcement witnesses testified that the defendant was found in possession of a set of digital scales that tested positive for marijuana residue. Law enforcement witnesses testified that the defendant was found in possession of a loaded handgun. Law enforcement witnesses testified that the defendant was found in possession of two separate stacks of one thousand dollars apiece, each folded over with a rubber band, and over four hundred dollars tucked into a separate stack. Lieutenant McCord testified that in his expert experience, each of these facts indicated that the defendant was a drug dealer, not a mere drug user. In light of this evidence, we conclude that the defendant has failed to carry his burden of establishing that the trial court's error in permitting him to be cross-examined concerning his juvenile record had any prejudicial effect on the jury's verdict. The defendantis not entitled to no relief on this claim.

## V.

The defendant claims that the trial court erred by permitting the prosecutor to cross-examine him concerning the street value of the Lortab pills that were discovered in his vehicle. "The propriety, scope, manner and control of examination of witnesses is within the trial court's discretion and will not be interfered with in the absence of an abuse of discretion." *State v. Harris*, 839 S.W.2d 54, 72 (Tenn. 1992). We discern no such abuse of discretion in this case.

The defendant complains of the following exchange, which took place after the defendant testified on both direct and cross-examination that he had paid approximately four dollars a pill for the Lortab that was found in his possession:

Q: Well, how much would you sell them for if you –
A: Basically, I wouldn't sell. I would take them.
Q: But if you could, what would you sell them for?
A: But I wouldn't. If I could get my hands on those right now, I wouldn't sell them.
Q: I understand that, but what I'm asking you is, if you could sell them, what would you sell them for? What would their value be?
Q: There's no set value to me because I like them so therefore I would take them myself. I wouldn't sell them.

-11-

Following this testimony, defense counsel objected that the question was asked and answered, and the court overruled the objection. Then the court continued:

> Court: You said you disagree with Lieutenant McCord's testimony about $20.00 a pill because of what you've heard on the street. That's not what they sell for. So what do they sell for on the street as far as you know?
>
> Witness: I basically heard like five, six, something like that.

The defendant claims that by forcing him to speculate as to the street value of the pills, the trial court prejudiced the jury against him. The defendant claims that "this line of questioning and the elicited hypothetical response forced by the State and the trial court were calculated to give the impression that the Defendant was a drug dealer no matter the response." The defendant claims that the unfair prejudice caused by this line of questioning outweighed any probative value of the defendant's response. In this regard, the defendant notes that Tennessee Rule of Evidence 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice," and he directs our attention to *State v. Banks*, 564 S.W.2d 947, 950-53 (Tenn. 1978), in which our supreme court held that it was error (*albeit* a harmless one) for a trial court to have admitted photographs of the victim at a murder trial because the prejudicial effect of the photographs far outweighed their probative value.

However, we believe that the line of questioning at issue was not unduly prejudicial. The questioning was not designed to inflame the passions of the jury or guide them to decide the case on the basis of anything other than the evidence presented. The defendant himself fairly raised the issue of his knowledge of the street value of Lortab when he testified that he believed that the value estimated by Lieutenant McCord was far too high. Furthermore, "I don't know" remained available to the defendant as an answer if he was truly unaware of the street value of Lortab. We discern no abuse of discretion in the trial court's decision to allow the line of questioning to continue. The defendant is not entitled to relief on his claim that the trial court abused its discretion by permitting him to be cross-examined concerning the street value of the hydrocodone pills discovered in his possession.

## VI.

The defendant claims that the trial court erred by concluding that he was convicted of possessing a Schedule II drug with the intent to sell or distribute, and consequently sentencing him for a Class C felony, with respect to merged Counts I and II. The defendant contends that he was only convicted of possessing a Schedule III drug with the intent to sell

or distribute and should therefore have been sentenced for a Class D felony. The State concedes that the trial court erred in sentencing the defendant for a Class C felony and acquiesces in remand. Upon review, we conclude that the defendant should have been sentenced for a Class D felony, and we remand the case for entry of a corrected judgment and re-sentencing as appropriate.

Tennessee Code Annotated section 39-17-417 generally makes possession of a Schedule II controlled substance with intent to sell or deliver a Class C felony. *See* T.C.A. § 39-17-417(c)(2)(A) ("Any . . . Schedule II controlled substance [except cocaine or methamphetamine above certain amounts] is a Class C felony...."). Section 39-17-417 generally makes possession of a Schedule III controlled substance a Class D felony. *See* T.C.A. § 39-17-417(d)(1) ("A violation of subsection (a) with respect to a Schedule III controlled substance is a Class D felony....").

The defendant's indictment, in Counts I and II, charged the defendant with possession of hydrocodone with intent to sell and possession of hydrocodone with intent to deliver. At trial, Agent Melanie Johnson, a forensic chemist, testified that the pills found in the defendant's car contained dihydrocodeinone, the chemical name for hydrocodone, in an amount of ten milligrams per pill. She testified that the pills also contained varying amounts of acetaminophen. The forensic chemistry report submitted as an exhibit to Agent Johnson's testimony listed the pills as dihydrocodeinone, a schedule III controlled substance. The jury's verdict found the defendant guilty as charged in Counts I and II of the indictment.

At sentencing, the trial court made clear that the defendant had been found guilty of possession of hydrocodone. The trial court correctly noted that "Hydrocodone" was listed in 39-17-408 under Schedule II. *See* T.C.A. § 39-17-408(b)(1)(J). Moreover, pursuant to the text of Schedule II, any listed opium or opiate is included in the schedule, as well as "any salt, compound, derivative, or preparation of [such] opium or opiate." T.C.A. § 39-17-408(b)(1). This broad language would appear to cover the pills carried by the defendant (as they were a "compound" or "derivative" of hydrocodone), and the trial court apparently reached this conclusion in determining that the defendant's pills were a Schedule II controlled substance.

However, Schedule III also covers certain "narcotic drugs," "[u]nless specifically excepted or unless listed in another schedule." *See* T.C.A. 39-17-410(e)(1) (Supp. 2007). These drugs specifically include "[n]ot more than three hundred (300) milligrams of dihydrocodeinone per one hundred (100) milliliters or not more than fifteen (15) milligrams per dosage unit, with one (1) or more active nonnarcotic ingredients in recognized therapeutic amounts." T.C.A. § 39-17-410(e)(1)(D) (Supp. 2007). The testimony at trial establishes that the defendant's pills fit into this category, as they contained 10 milligrams

of dihydrocodeinone per dose, and contained acetaminophen in approved amounts. While this exception does not apply to drugs "listed in another schedule," and "hydrocodone" is certainly listed in another schedule (Schedule II), reading this language as exempting all hydrocodone compounds simply because hydrocodone has been listed in Schedule II would render this entire, more specific, statutory provision mere surplusage.

Rather than reach such an unusual result, we conclude that what the legislature intended by use of this admittedly confusing language was, in layman's terms, to list relatively "pure" hydrocodone as a Schedule II drug, and more "diluted" forms of hydrocodone (which meet the specific statutory criteria), such as Lortab, as Schedule III drugs. Consequently, we hold that Lortab and other mixtures of hydrocodone that comply with the strictures of Schedule III are Schedule III drugs, and possessing them with intent to sell or distribute in violation of section 39-17-417(a) is a Class D felony.

In reaching this conclusion, we are in accord with other decisions of this court, which have deemed (without discussion) Lortab to be a Schedule III controlled substance and its possession with intent to sell or distribute to be a Class D felony. *See, e.g., State v. Bobby Lewis Smith,* No. M2010-02077-CCA-R3-CD (Tenn. Crim. App., at Nashville, Aug. 31, 2012); *State v. Larry Ballentine*, No. M2004-02175-CCA-R3-CD (Tenn. Crim. App., at Nashville, Jan. 31, 2006). We conclude that the defendant was convicted of a Class D felony in merged counts I and II, and we remand the defendant's case for re-sentencing as appropriate.

## VII.

The defendant's final claim is that the trial court erred by failing to find mitigating factors during sentencing and by ordering him to serve four years on the merged Count I and II offenses. The defendant claims that he had a GED, a good job, and no adult criminal history. The defendant claims that "[b]ased on those mitigating factors, the trial court should have sentenced him to three years rather than four."

We review a defendant's challenge to an in-range sentence under an abuse of discretion standard. *State v. Bise*, 380 S.W.3d 682, ___ (Tenn. 2012) ("[T]oday we adopt an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act."). "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.*

Although we remand the defendant's case for re-sentencing on merged Counts I and

II as a Class D felony, we note that a trial court's mere failure to give effect to mitigating evidence offered by the defendant provides no grounds for relief under *Bise*. So long as the defendant's sentence is within range and the trial court has not wholly departed from the Sentencing Act, the sentence imposed by the trial court will be affirmed.

## CONCLUSION

For the foregoing reasons, the judgments of conviction from the trial court are affirmed and the case is remanded to the trial court for re-sentencing.


_____
JOHN EVERETT WILLIAMS, JUDGE