# PENNSYLVANIA *v.* LABRON

No. 95–1691.   Decided July 1, 1996*

PER CURIAM.

In these two cases, the Supreme Court of Pennsylvania held that the Fourth Amendment, as applied to the States through the Fourteenth, requires police to obtain a warrant

---

*Together with No. 95–1738, *Pennsylvania* v. *Kilgore,* also on petition for writ of certiorari to the same court.

before searching an automobile unless exigent circumstances are present. Because the holdings rest on an incorrect reading of the automobile exception to the Fourth Amendment's warrant requirement, we grant the petitions for certiorari and reverse.

In *Labron*, No. 95–1691, police observed respondent Labron and others engaging in a series of drug transactions on a street in Philadelphia. The police arrested the suspects, searched the trunk of a car from which the drugs had been produced, and found bags containing cocaine. The Pennsylvania Supreme Court agreed with the trial court (but not with the intermediate court of appeals, 428 Pa. Super. 616, 626 A. 2d 646 (1993), whose judgment it reversed) that this evidence should be suppressed. 543 Pa. 86, 669 A. 2d 917 (1995). After surveying our precedents on the automobile exception as well as some of its own decisions, the court "conclude[d] that this Commonwealth's jurisprudence of the automobile exception has long required both the existence of probable cause and the presence of exigent circumstances to justify a warrantless search." *Id.*, at 100, 669 A. 2d, at 924. Satisfied the police had time to secure a warrant, *id.*, at 100–103, 699 A. 2d, at 924–925, the court held that "the warrantless search of this stationary vehicle violated constitutional guarantees," *id.*, at 101, 669 A. 2d, at 924.

In *Kilgore*, No. 95–1738, an undercover informant agreed to buy drugs from respondent Randy Lee Kilgore's accomplice, Kelly Jo Kilgore. To obtain the drugs, Kelly Jo drove from the parking lot where the deal was made to a farmhouse where she met with Randy Kilgore and obtained the drugs. After the drugs were delivered and the Kilgores were arrested, police searched the farmhouse with the consent of its owner and also searched Randy Kilgore's pickup truck; they had seen the Kilgores walking to and from the truck, which was parked in the driveway of the farmhouse. The search turned up cocaine on the truck's floor. The trial court denied Randy Kilgore's motion to suppress the cocaine, holding the officers had probable cause to make the search.

The appellate court affirmed. 437 Pa. Super. 491, 650 A. 2d 462 (1994). The Supreme Court of Pennsylvania reversed, citing *Labron* and holding that although there was probable cause to search the truck, 544 Pa. 439, 444, 677 A. 2d 311, 313 (1995), the search violated the Fourth Amendment because no exigent circumstances justified the failure to obtain a warrant, *id.*, at 445, 677 A. 2d, at 313–314.

The Supreme Court of Pennsylvania held the rule permitting warrantless searches of automobiles is limited to cases where " 'unforeseen circumstances involving the search of an automobile [are] coupled with the presence of probable cause.' " 543 Pa., at 100, 669 A. 2d, at 924, quoting *Commonwealth* v. *White*, 543 Pa. 45, 53, 669 A. 2d 896, 901 (1995) (emphasis deleted). This was incorrect. Our first cases establishing the automobile exception to the Fourth Amendment's warrant requirement were based on the automobile's "ready mobility," an exigency sufficient to excuse failure to obtain a search warrant once probable cause to conduct the search is clear. *California* v. *Carney*, 471 U. S. 386, 390–391 (1985) (tracing the history of the exception); *Carroll* v. *United States*, 267 U. S. 132 (1925). More recent cases provide a further justification: the individual's reduced expectation of privacy in an automobile, owing to its pervasive regulation. *Carney, supra*, at 391–392. If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more. *Carney, supra*, at 393. As the state courts found, there was probable cause in both of these cases: Police had seen respondent Labron put drugs in the trunk of the car they searched and had seen respondent Kilgore act in ways that suggested he had drugs in his truck. We conclude the searches of the automobiles in these cases did not violate the Fourth Amendment.

Respondent Labron claims we have no jurisdiction to review the judgment in his case because the Pennsylvania Supreme Court's opinion rests on an adequate and independ-

ent state ground, viz., "this Commonwealth's jurisprudence of the automobile exception." 543 Pa., at 100, 669 A. 2d, at 924. We disagree. The language we have quoted is not a "plain statement" sufficient to tell us "the federal cases [were] being used only for the purpose of guidance, and d[id] not themselves compel the result that the court ha[d] reached." *Michigan* v. *Long*, 463 U. S. 1032, 1041 (1983). The Pennsylvania Supreme Court did discuss several of its own decisions; as it noted, however, some of those cases relied on an analysis of our cases on the automobile exception, see, *e. g.*, 543 Pa., at 95, 669 A. 2d, at 921 (observing *Commonwealth* v. *Holzer*, 480 Pa. 93, 103, 389 A. 2d 101, 106 (1978), cited *Coolidge* v. *New Hampshire*, 403 U. S. 443 (1971)); 543 Pa., at 100, 669 A. 2d, at 924 (stating *Commonwealth* v. *White, supra,* rested in part upon the Pennsylvania Supreme Court's analysis of *Chambers* v. *Maroney*, 399 U. S. 42 (1970)). The law of the Commonwealth thus appears to us "interwoven with the federal law, and . . . the adequacy and independence of any possible state law ground is not clear from the face of the opinion." *Michigan* v. *Long*, 463 U. S., at 1040–1041. Our jurisdiction in Labron's case is secure. *Ibid.* The opinion in respondent Kilgore's case, meanwhile, rests on an explicit conclusion that the officers' conduct violated the Fourth Amendment; we have jurisdiction to review this judgment as well.

Respondent Labron's motion to proceed *in forma pauperis* is granted. The petitions for writs of certiorari are granted, the judgments of the Supreme Court of Pennsylvania are reversed, and the cases are remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE GINSBURG joins, dissenting.

The decisions that the Court summarily reverses today are two of a trilogy of cases decided by the Pennsylvania Su-

preme Court within three days of each other. See 544 Pa. 439, 677 A. 2d 311 (1995); *Commonwealth* v. *White,* 543 Pa. 45, 669 A. 2d 896 (1995); 543 Pa. 86, 669 A. 2d 917 (1995).[1] In each case, that court concluded that citizens of Pennsylvania are protected from warrantless searches and seizures of their automobiles absent exigent circumstances. But a fair reading of both *White* (the holding of which the Commonwealth has not challenged in this Court) and *Labron* (which the Court reverses today) demonstrates that their judgments almost certainly rested upon the Pennsylvania court's independent consideration of its own Constitution. For that reason, I do not believe that we have jurisdiction over the decision in *Labron,* just as we would not have jurisdiction in *White.* See 28 U. S. C. § 1257(a).[2] Furthermore, when considered in light of those two more carefully reasoned decisions, there is no reason for this Court to disturb the state court's finding in *Kilgore,* since the result will almost certainly be affirmed on remand.

In its *per curiam* decision, this Court concludes that because the decision in *Labron* cited state decisions which in turn referred to two 25-year-old cases of this Court, any reference to state law is "'interwoven with the federal law.'" *Ante,* at 941 (quoting *Michigan* v. *Long,* 463 U. S. 1032, 1040 (1983)). These references, however, seem to me a rather short thread with which to weave—let alone upon which to hang—our jurisdiction.

---

[1] Each decision was issued by a different division of the Pennsylvania Supreme Court.

[2] Even if, as the Court concludes, *ante,* at 941, some element of residual doubt suggests that Pennsylvania's Supreme Court drew inspiration from our interpretations of the Federal Constitution, I do not think that reliance sufficient to justify expending this Court's time—or that of the Pennsylvania Supreme Court—simply to scour the state decisions of all references to the Federal Constitution. See *infra,* at 943–950.

In my opinion, the best reading of *Labron's* plain language is that it relied on adequate and independent state grounds. The majority decision below includes references to four sources of federal law: the Federal Constitution and three federal cases. None of the references demonstrates that the decision rested upon anything other than state law.

The decision begins with the proposition, not at issue here, that "the Fourth Amendment to the United States Constitution and Article I, § 8 of the Pennsylvania Constitution generally require that searches be predicated upon a warrant issued by a neutral and detached magistrate." 543 Pa., at 93, 669 A. 2d, at 920 (citations omitted). It then reviews the history of the so-called "automobile exception" to the warrant requirement by quoting several passages from our decision in *Carroll* v. *United States*, 267 U. S. 132 (1925), which first established the exception, and then quotes a passage from *Chambers* v. *Maroney*, 399 U. S. 42, 52 (1970),[3] which appears to support the proposition under federal law that the Court emphasizes here today (that the existence of probable cause is sufficient in and of itself to justify a search of a vehicle). 543 Pa., at 94–95, 669 A. 2d, at 920–921.

Rather than follow the developments of federal law, however, the decision then specifically and immediately notes that "[w]hen reviewing warrantless automobile searches *in this Commonwealth*, we have constantly held that 'there is no "automobile exception" as such and [that] the constitutional protections are applicable to searches and seizures of a person's car.' *Commonwealth* v. *Holzer*, 480 Pa. 93, 103, 389 A. 2d 101, 106 (1978) (citing *Coolidge* v. *New Hampshire*,

---

[3] As the Pennsylvania Supreme Court noted, in *Chambers* we held that " '[f]or constitutional purposes, [there is] no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant.' " 543 Pa. 86, 95, 669 A. 2d 917, 921 (1995) (quoting *Chambers* v. *Maroney*, 399 U. S., at 52).

403 U. S. 443 . . . (1971))." *Id.*, at 95, 669 A. 2d, at 921 (emphasis added). From that point onward, the only reference to federal law in the decision's remaining 30 citations is a recognition that *White*, the sole decision of this trio of "exigent circumstance" cases that is not before our Court, was "based upon" that Court's analysis of *Chambers*. 543 Pa., at 99–100, 669 A. 2d, at 923–924. Every other citation in *Labron* is to Pennsylvania law.

Because *White* was issued on the same day as *Labron* and reached an identical conclusion regarding the "exigent circumstances" rule, that decision is worth reviewing. In *White*, the court hesitated before considering the merits of the case "to address the Commonwealth's claim that White has waived his claim that the search of his automobile was illegal under Article I, Section 8 of the Pennsylvania Constitution because he did not set forth his state constitutional claims in the manner required." The Commonwealth's claim, the court found, was "meritless." "White clearly raises a claim under the Pennsylvania Constitution, cites cases in support of his claim, and relates the cases to the claim. That is sufficient." 543 Pa., at 50, 669 A. 2d, at 899.

Having established the importance of the state constitutional claim to the defendant's argument, *White* went on to discuss the "exigent circumstance" exception at issue here in light of both federal and state law. And although the court's analysis relied upon our decision in *Chambers* v. *Maroney*, it cited none of the subsequent cases in which this Court has effectively converted the "automobile exception" into an absolute rule allowing searches in the presence of probable cause. See 543 Pa., at 49–53, 669 A. 2d, at 899–901; n. 6, *infra* (noting that the Pennsylvania courts' failure to refer to this Court's subsequent decisions in this area may be intentional rather than ignorant). Stressing the independent evaluation it makes of its State Constitution, the Pennsylvania court also rejected our decision in *New York* v. *Belton*,

453 U. S. 454 (1981), on state constitutional grounds. See 543 Pa., at 54–58, 669 A. 2d, at 901–903.[4]

Notably, the Commonwealth has not asked this Court to review the Pennsylvania court's decision in *White,* even though the search in that case would be affirmed under the Commonwealth's and this Court's understanding of Pennsylvania's holding regarding exigent circumstances. I also note that lower state courts have explicitly read *White* as establishing a state constitutional right, not a federal right. *Commonwealth* v. *Haskins,* 450 Pa. Super. 540, 545, 677 A. 2d 328, 330 (1996) ("In order to search an automobile without a warrant, the police must still show the existence of both probable cause and exigent circumstances. *Commonwealth* v. *White,* 543 Pa. 45, 669 A. 2d 896 (1995). . . . In *White,* our Supreme Court reiterated that the Pennsylvania Constitution requires such a showing"); see also *Commonwealth* v. *Yedinak,* 450 Pa. Super. 352, 359, n. 5, 676 A. 2d 1217, 1220, n. 5 (1996) ("The Pennsylvania Supreme Court recently held that the Pennsylvania Constitution provides greater protection than the United States Constitution with regard to automobile searches in *Commonwealth* v. *White*").

The lower courts' understanding regarding the state-law nature of *White*—and my understanding of the state-law nature of *Labron* as well—is almost perfectly reflected in the dissents to each case that were penned by Justice Castille. In both instances, Justice Castille recognizes, even more explicitly than the majority, that the decisions were based on state law.

In *Labron,* for instance, his main point was that the defendant had no standing to challenge the constitutionality of

---

[4] Although the court's main opinion in *Commonwealth* v. *White* also asked whether the search would have been permissible as a search incident to an arrest, the dissent later noted that the only question presented in the appeal was whether "exigent circumstances" were necessary to permit a warrantless search of a car based on probable cause. See 543 Pa., at 72–73, 669 A. 2d, at 910.

the search of a car that he did not own. In making his argument, however, he noted that "the majority correctly characterizes *Pennsylvania law* regarding the 'automobile exception' to the warrant requirement." 543 Pa., at 104, 669 A. 2d, at 926 (emphasis added). And although he reviewed decisions of this Court on standing to claim violations of the Fourth Amendment, he went on to note: "*Under Article I, Section 8 of the Pennsylvania Constitution,* however, this Court looks to several additional factors to determine whether a criminal defendant has standing to challenge the admission of evidence against him." *Id.*, at 106, 669 A. 2d, at 927 (emphasis added).

In *White*, Justice Castille stated that he believed that "the automobile exception to the warrant requirements of *this Commonwealth* should be a *per se* rule regardless of how much time police may have to obtain a warrant," 543 Pa., at 70, 669 A. 2d, at 909 (emphasis added), and he further concluded that he would "urge the adoption of a bright line rule that would allow warrantless searches of all automobiles for which police have independent probable cause," *id.*, at 71, 669 A. 2d, at 909–910. Of course, if Justice Castille were interpreting federal, rather than state, law, he would not have the luxury of "urging the adoption" of a particular rule.[5]

Having reviewed the range of the Pennsylvania courts' statements regarding the source of the "exigent circumstances" rule, it is worthwhile to review this Court's understanding of when a state decision is based on adequate and independent state grounds. In *Michigan* v. *Long*, the Court adopted a "plain statement" rule for determining whether a state decision rested on "independent and adequate" state-law grounds. "[B]ecause of [our] respect for state courts,

---

[5] Justice Castille also specifically noted that the *Belton* decision was not raised by the parties, and that the majority's discussion of it was dicta, further emphasizing that his emphasis on Pennsylvania law was related to the sole issue that he believed presented: whether a warrantless search of an automobile requires both probable cause and an exigent circumstance.

and [a] desire to avoid advisory opinions, . . . we [did] not wish to continue to decide issues of state law that go beyond the opinion that we review, or to require state courts to reconsider cases to clarify the grounds of their decisions." 463 U. S., at 1040. When "a state court decision fairly appears to rest *primarily* on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion," we held, we would conclude that the State decided as it did because federal law required it to do so. *Id.*, at 1040–1041.

Given the explicit and nearly exclusive references to state law that I review above, it seems to me that the Court's decision to take jurisdiction in *Labron* not only extends *Michigan* v. *Long* beyond its original scope, but stands its rationale on its head. *Labron* does not rest "primarily" on federal law; as Justice Castille understood it, as the briefing in *White* understood it, and as the Commonwealth's decision to stay out of *White* demonstrates, every indication is that the rule adopted in *Labron* and *White* rests primarily on state law. Nor are these holdings "interwoven" with federal law: Both *Labron* and *White* cite only two federal cases, both over a quarter-century old; rather than implicitly conclude that the absence of any reference to more recent decisions is due to poor legal research, I would trust the Pennsylvania courts' ability to understand and choose to deviate from our federal law. Certainly it would be a more respectful approach, in a case where the question is as close as it is in this case, to conclude that the State had made a conscious decision to depart from the jurisprudence of this Court rather than an error of law.[6]

_____

[6] Indeed, the author of *Labron* noted in *White* that "the history of Article I, Section 8 and case-law interpreting it reveal a history of according a limited expectation of privacy in an automobile independently under the Pennsylvania Constitution. Therefore, the question before us today is not whether we wish to extend additional privacy protections to the Appellant

The nature of the Pennsylvania court's reliance on federal law in these cases, therefore, is quite different from that which spurred the Court to conclude in *Michigan* v. *Long* that the judgment of the Michigan Supreme Court had not relied on adequate and independent state grounds. There, as the Court noted, the decision below "referred twice to the State Constitution in its opinion, but otherwise relied *exclusively* on federal law." 463 U. S., at 1037 (emphasis

---

but whether we wish to follow the United States Supreme Court and sharply curtail a privacy interest long recognized by this Court." *Commonwealth* v. *White*, 543 Pa., at 62, 669 A. 2d, at 905.

To this end, I find it particularly interesting that only two Pennsylvania courts have cited the decision in *California* v. *Carney*, 471 U. S. 386 (1985), upon which the *per curiam* decision relies as modern support for its interpretation of federal constitutional law. See *Commonwealth* v. *Rosenfelt*, 443 Pa. Super. 616, 632–634, 662 A. 2d 1131, 1139 (1995); *Commonwealth* v. *Camacho*, 425 Pa. Super. 567, 625 A. 2d 1242 (1995). Each of those decisions expressly noted the presence of conflict between federal and state law on this issue.

In *Camacho*, the Superior Court noted "the discrepancy between some of the Commonwealth's past cases and federal cases which speak to automobile searches" in cases like those at issue here. *Id.*, at 576, n. 2, 625 A. 2d, at 1247, n. 2. After reviewing the holding in *Carney*, the court noted that the state cases concluding that there was no *per se* "'automobile exception'" were "simply dated and not in keeping with the tenor of current law." 425 Pa. Super., at 577, n. 2, 625 A. 2d, at 1247, n. 2.

The court in *Rosenfelt* reached an alternative explanation for the conflict—and a result identical to that reached in the cases reversed by the Court today. There, the defendant agreed that the search of the vehicle was not illegal under federal law. Citing *Carney*, the court noted that the federal "automobile exception" had "jettison[ed]" the requirement of exigency, essentially converting the exception into a *per se* rule allowing a search once probable cause exists. See 443 Pa. Super., at 633, 644–645, 662 A. 2d, at 1139, 1145. Noting that the State Constitution could extend greater protections to Pennsylvania citizens than did the Federal Constitution, but that its Supreme Court had not yet decided whether that was the case, the Superior Court went on to review the issue on its own and found a state constitutional violation. *Ibid.* After it decided the cases at issue here, the Pennsylvania Supreme Court denied the Commonwealth's appeal. See 544 Pa. 605, 674 A. 2d 1070 (1996) (table).

added). The dissents below also relied explicitly and *exclusively* on decisions of this Court. *Id.*, at 1037, n. 2; *Michigan* v. *Long*, 413 Mich. 461, 473–486, 320 N. W. 2d 866, 870–875 (1982) (Coleman, C. J., dissenting, Moody, J., concurring in part and dissenting in part). Indeed, the critical holding of the Court was that the Michigan "Court of Appeals erroneously applied the principles of *Terry* v. *Ohio.*" *Id.*, at 471, 320 N. W. 2d, at 869 (citation omitted).[7] The opinion in these cases presents almost precisely the opposite situation: The decision refers to the Federal Constitution once, but otherwise relies *exclusively* on state law.

For these reasons, just as the decision in *White* would not merit summary reversal were it before this Court, the decision in *Labron* should not be summarily reversed. Although *Labron* and *White* both touch upon, and even place some historical reliance upon, federal search and seizure law, each also recognizes the broad interpretation that the Pennsylvania court has given its own constitutional prohibition against warrantless searches. I therefore seriously ques-

---

[7] On the many subsequent occasions in which this Court has taken jurisdiction over state decisions over which there was some dispute about the nature of the relationship between federal and state law, the state opinions were far more "interwoven" with federal law than is true in these cases. See, *e. g., Illinois* v. *Rodriguez,* 497 U. S. 177, 182 (1990) (decision below did not "rely on (or even mention) any specific provision" of State Constitution); *Pennsylvania* v. *Muniz,* 496 U. S. 582, 588, n. 4 (1990) (state constitutional provision construed to provide protections identical to Federal Constitution); *Florida* v. *Riley,* 488 U. S. 445, 448, n. 1 (1989) (decision below mentioned State Constitution only twice, but "focused exclusively on federal cases dealing with the Fourth Amendment"); *Michigan* v. *Chesternut,* 486 U. S. 567, 571, n. 3 (1988) (decision below "said nothing to suggest that the Michigan Constitution's seizure provision provided an independent source of relief, and the court's entire analysis rested expressly on the Fourth Amendment and federal cases"); *Kentucky* v. *Stincer,* 482 U. S. 730, 735, n. 7 (1987) (decision below "consistently referred to respondent's rights under the . . . Federal Constitution as supporting its ruling"); *Maryland* v. *Garrison,* 480 U. S. 79, 83–84 (1987) (State Constitution construed *in pari materia* with Federal Constitution).

tion whether respect for the reasoning, independence, and resources of the Pennsylvania court will be advanced by today's decision.

While *Kilgore* relies more explicitly on the Federal Constitution than the other two decisions, it decided the identical issue that was decided in *Labron* and *White* only three days before those decisions issued. The reference to the Federal Constitution upon which the Court rests its jurisdiction—only one of two references to federal law—must be read in the context of the other two decisions, each of which relied heavily upon the Commonwealth's own Constitution. In light of *Labron* and *White*, the judgment in *Kilgore* will almost certainly remain the same on remand. In such a circumstance, the rationales supporting the rule of *Michigan v. Long* simply do not support the decision to reverse. The petition in *Kilgore* should simply be denied.

On many prior occasions, I have noted the unfortunate effects of the rule of *Michigan* v. *Long*. See, *e. g., Harris* v. *Reed,* 489 U. S. 255, 266–267 (1989) (concurring opinion); *Delaware* v. *Van Arsdall,* 475 U. S. 673, 689–708 (1986) (dissenting opinion); *Montana* v. *Hall,* 481 U. S. 400, 411 (1987) *(per curiam)* (dissenting opinion); *Ponte* v. *Real,* 471 U. S. 491, 501–503 (1985) (opinion concurring in part); see also *Arizona* v. *Evans,* 514 U. S. 1, 24, 31–34 (1995) (GINSBURG, J., dissenting). Because the state-law ground supporting these judgments is so much clearer than has been true on most prior occasions, see n. 5, *supra,* these decisions exacerbate those effects to a nearly intolerable degree. Particularly in light of my understanding of this Court's primary role—"to protect the rights of the individual that are embodied in the Federal Constitution," *Harris,* 489 U. S., at 267—the decision to summarily reverse state decisions resting tenuously at best on federal grounds is imprudent and entirely inconsistent "with the sound administration of this Court's discretionary docket." *Ponte,* 471 U. S., at 502–503.

The Pennsylvania court has in these and other cases expressly indicated its intent to extend the protections of its Constitution beyond those available under the Federal Constitution, see, *e. g., Commonwealth* v. *Edmunds,* 526 Pa. 374, 586 A. 2d 887 (1991) (setting forth test for establishing rights under Pennsylvania Constitution); *Commonwealth* v. *Rosenfelt,* 443 Pa. Super. 616, 634–637, 662 A. 2d 1131, 1140–1141 (1995) (reviewing state cases extending greater protections under the Pennsylvania Constitution). The *per curiam* decision that the Court issues today merely makes that task harder by requiring the Commonwealth to purge its decisions of any reliance on the latter, despite the value of the insights that our decisions can provide on related issues of law. By "unceremoniously reversing its judgment," *Van Arsdall,* 475 U. S., at 701 (STEVENS, J., dissenting), we also demonstrate a lack of respect for the Pennsylvania court and the sophistication of its state search and seizure law. See *id.,* at 699.

These harms are particularly unnecessary given the likely result on remand. To reinvigorate the privacy protections extended to Pennsylvania citizens under *Labron, Kilgore,* and *White,* the Pennsylvania Supreme Court need only set forth the appropriate talismanic language and state, even more clearly than it already has, that the *"Commonwealth's* jurisprudence of the automobile exception [requires] both the existence of probable cause and the presence of exigent circumstances to justify a warrantless search." *Labron,* 543 Pa., at 100, 669 A. 2d, at 924 (emphasis added).[8] While the

---

[8] State courts have, of course, done this on many occasions in the past. See, *e. g., Ponte* v. *Real,* 471 U. S. 491, 503, n. 4 (1985) (STEVENS, J., concurring in part) (listing various cases in which reversals by this Court were followed by state-court decisions affirming the original holding on state-law grounds); *Montana* v. *Hall,* 481 U. S. 400, 411 (1987) *(per curiam)* (STEVENS, J., dissenting) (same).

result will be identical, resources and respect will have been unnecessarily lost.

I respectfully dissent.