J-A10043-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
ELI ANTHONY LASTON :
:
Appellant : No. 2343 EDA 2018

Appeal from the Judgment of Sentence Entered July 23, 2018
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0006987-2017

BEFORE: GANTMAN, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.E.: **FILED JUNE 07, 2019**

Appellant, Eli Anthony Laston,[1] appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas, following his bench trial convictions for three counts of adulteration of a controlled substance, and one count each of possession of an adulterated controlled substance, possession of a controlled substance, possession of drug paraphernalia, firearms not to be carried without a license, possession of a weapon, and prohibited offensive weapons.[2] We affirm.

The relevant facts and procedural history of this case are as follows.

Chief Anthony R. Paparo is currently employed by the

---

[1] Appellant's last name is spelled variously throughout the certified record as "Laston" and "Latson."

[2] 35 P.S. §§ 780-113(a)(2), (a)(1), (a)(16), (a)(32); 18 Pa.C.S.A. §§ 6106(a)(1), 907(b), 908(a), respectively.

Yeadon Borough Police Department and was previously employed by the Upper Darby Police Department as a Patrol Captain, where he was so employed on September 14, 2017.

At approximately 12:30 p.m., on September 14, 2017, Captain Paparo was on patrol in an unmarked Dodge Charger on Crosley Road, approaching the area of Greenwood Avenue and Radbourne Road when he observed [Appellant] operating a Dodge Ram pickup truck. The truck was coming off of Greenwood Avenue making a right turn onto Crosley Road.

Captain Paparo observed the Dodge Ram drive through the intersection, failing to stop at the stop sign at Greenwood Avenue and Crosley Road. Captain Paparo estimated the Dodge Ram was proceeding at a rate of speed of over 30 mph, in excess of the speed limit.

Captain Paparo observed the Dodge Ram fail to stop at the following intersection and again at the stop sign at the following intersection of Emerson Street and Atlantic Avenue. Captain Paparo made a U-turn and pulled up behind the Dodge and activated his warning lights.

Captain Paparo could see through the rear window of Appellant's vehicle, although tinted, and observed Appellant moving around the front seat of the vehicle and he appeared to be placing some kind of large object into the backseat. Due to the tint on the window, Captain Paparo was unable to determine with certainty that there were any other occupants of the vehicle.

Captain Paparo the[n] approached driver's side of the vehicle; Appellant rolled down his window and the two began to converse. At that time, Captain Paparo was fairly certain that Appellant was the only occupant. Captain Paparo asked for Appellant's registration and insurance, which Appellant complied with. Captain Paparo asked Appellant what happened with the stop signs to which Appellant said that he didn't see them.

Captain Paparo asked Appellant about the movements Appellant was making in the front seat when he was pulled

over and that he made Captain Paparo concerned. Appellant stated that he had reached over to open the center console to find all of his paperwork as he knew he was being stopped. Appellant demonstrated the movement to Captain Paparo, which revealed a prescription bottle in the center console. Appellant then closed the center console.

Captain Paparo asked Appellant if he was taking any prescription medication and Appellant stated that he was taking it but hadn't for a while. Captain Paparo asked Appellant to hand him the prescription bottle, which Appellant freely handed over. Captain Paparo observed that [t]he name on the bottle did not match Appellant's name. Appellant stated that it was a friend's bottle.

At this point, Captain Paparo asked Appellant to step out of the vehicle for [officer] safety. As Appellant stepped out, Captain Paparo observed another prescription bottle in the driver's [side door] pocket that appeared to have the label scraped off. Captain Paparo led Appellant to [the] back area of the truck and conducted a pat down, where [Captain Paparo] detected what was immediately apparent to him to be pills in Appellant's pocket in what felt to be an envelope.

Upon removing the envelope containing the pills, the envelope turned out to be a…parking ticket. As [Captain Paparo] was removing the envelope, Appellant stated that they were his pills and that he did not like to carry his whole prescription with him so he carried it like that. Captain Paparo was able to identify the pills as oxycodone.

Appellant was told to sit down at the rear of his vehicle; Captain Paparo asked if there were other controlled substances in the vehicle to which Appellant responded "no."

Captain Paparo told Appellant that he was going to look in the vehicle based on the fact that [Appellant] had a prescription not properly labeled on his person. Captain Paparo retrieved the prescription bottle along the [driver's] side door. A search of the remainder of the vehicle resulted in "a bunch of empty bottles" notably, a oxycodone bottle, one that would hold 100 pills, which [Captain Paparo] knows at this time to be in excess of what a pharmacy would

dispense to an individual for use.

In the front portion of the center console, there was another compartment, which contained a "fake looking gun that was gold in color." At that time, Captain Paparo told another officer who had arrived on scene to watch the gun and [Captain Paparo] went and placed Appellant into custody for further investigation, telling Appellant that he was under arrest for the prescription bottles not having his name on them and the firearm. Appellant responded that it was a starter gun.

When Captain Paparo was holding the gun he couldn't find a serial number on it and it felt heavy. Captain Paparo noticed that it actually had a magazine in it that had…four live 380[-caliber] rounds and [a] round that appeared to be a blank. Once he cleared the weapon and inspected it further, Captain Paparo noticed that [it] looked like someone had actually taken a drill bit and drilled out the bore of the barrel and the gun was located with live ammunition (the firearm was later sent to a state police crime lab and found to be a functioning weapon).

Appellant advised that he did not have a permit to carry or a sportsman permit to carry. A further search of the vehicle revealed numerous drug paraphernalia, including multiple bottles for various types of different pills[, some of which contained controlled substances].

\* \* \*

On April 23, 2018, Appellant filed a Motion to Suppress seeking to suppress the evidence located in Appellant's vehicle and on his person as the searches were unsupported by probable cause or reasonable suspicion. A hearing was held on May 7, 2018, at which time the Commonwealth presented testimony from Captain Anthony Paparo. Captain Paparo testified to the facts as set forth above. [The c]ourt took the matter under advisement and permitted both parties to file briefs. On June 5, 2018, [the c]ourt issued an Order denying the Motion which included extensive Findings of Fact and Conclusions of Law….

On July 3, 2018, the case proceeded to a stipulated non-

- 4 -

jury trial. … [The c]ourt took the matter under advisement. On July 11, 2018, after reviewing exhibits, [the c]ourt issued an order finding Appellant guilty of [nine separate counts].

Appellant was sentenced on July 23, 2018, to an aggregate term of 23 months' intermediate punishment plus seven years of probation. No Post-Sentence Motions were filed.

On August 10, 2018, Appellant filed a timely Notice of Appeal and a timely response to [the c]ourt's [Rule] 1925(b) request [on August 31, 2018].

(Trial Court Opinion, filed September 10, 2018, at 1-6) (internal citations omitted).

Appellant raises the following issue for our review:

DID THE COURT ERR IN DENYING THE MOTION TO SUPPRESS WHERE THE OFFICER LACKED PROBABLE CAUSE TO SEARCH THE VEHICLE?

(Appellant's Brief at 8).

Appellant argues the mislabeled prescription pill bottle did not give Captain Paparo probable cause to search Appellant's vehicle. Appellant contends Captain Paparo could not determine whether the pills contained in the mislabeled bottle were illegal substances. Appellant posits Captain Paparo unlawfully searched Appellant's vehicle without definitive knowledge of possible contraband and no other facts to give rise to probable cause. Appellant concludes this Court should vacate the judgment of sentence, reverse the order denying suppression, and remand for a new trial. We disagree.

Our standard of review of the denial of a motion to suppress evidence

is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where…the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on [the] appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the [trial court are] subject to plenary review.

*Commonwealth v. Hoppert*, 39 A.3d 358, 361-62 (Pa.Super. 2012), *appeal denied*, 618 Pa. 684, 57 A.3d 68 (2012).

An officer may order an occupant to exit his vehicle after the detention of the vehicle for a violation of traffic law until the traffic stop is completed, even absent reasonable suspicion that criminal activity is afoot. *Commonwealth v. Harris*, 176 A.3d 1009, 1020-21 (Pa.Super. 2017). The officer can conduct a pat-down of a suspect's outer garments if the officer observes conduct that leads him to reasonably believe the suspect may be armed and dangerous. *Commonwealth v. Mack*, 953 A.2d 587, 590 (Pa.Super. 2008) (noting officer's observation of suspect's reaching movements while suspect was in vehicle can lead officer to reasonably

conclude his safety is in jeopardy).

"[T]he Fourth Amendment to the United States Constitution and Article I, § 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures and, to that end, a search conducted without a warrant is generally presumed unreasonable unless it is undertaken pursuant to a recognized exception to the warrant requirement." *Commonwealth v. Lechner*, 685 A.2d 1014, 1016 (Pa.Super. 1996).

> The level of probable cause necessary for warrantless searches of automobiles is the same as that required to obtain a search warrant. The well-established standard for evaluating whether probable cause exists is the "totality of the circumstances" test. This test allows for a flexible, common-sense approach to all circumstances presented. Probable cause typically exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. The evidence required to establish probable cause for a warrantless search must be more than a mere suspicion or a good faith belief on the part of the police officer.

*Id.* (internal citations omitted). "[P]robable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." *Commonwealth v. Spieler*, 887 A.2d 1271, 1275 (Pa.Super. 2005).

Article I, Section 8 of the Pennsylvania Constitution affords no greater protection with respect to warrantless searches of motor vehicles than does the Fourth Amendment to the United States Constitution. *Commonwealth v. Gary*, 625 Pa. 183, 242, 91 A.3d 102, 138 (2014). Under either

constitutional provision, "[t]he prerequisite for a warrantless search of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is required." *Id.* Additionally, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits police to search the vehicle without more." *Id.* at 199, 91 A.3d at 111-12 (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S. Ct. 2485, 2487, 135 L. Ed. 2d 1031, ___ (1996)).

Instantly, Captain Paparo witnessed Appellant disregard multiple stop signs and stopped his vehicle. Captain Paparo then saw Appellant place a large object in the rear of his vehicle. The captain approached the vehicle and asked Appellant about his movements; Appellant stated he had searched for his registration and insurance. Appellant opened the center console to demonstrate his earlier movements, and Captain Paparo noticed a prescription pill bottle in the console. The captain asked Appellant to hand over the pill bottle, and Appellant complied. The captain observed that the name on the pill bottle was not Appellant's name.

Captain Paparo asked Appellant to exit his vehicle. Upon Appellant's exit, the captain saw another prescription pill bottle in the driver's-side door pocket with the label torn off. Captain Paparo conducted a pat down for officer safety and detected pills, which the captain later determined to be oxycodone, in an envelope in Appellant's pants pocket. Appellant denied having any more pills in his vehicle. Captain Paparo searched Appellant's vehicle and discovered

multiple prescription bottles for other pills, some of which contained controlled substances, and a firearm in the center console. Appellant filed a motion to suppress the items found on his person and in the vehicle based on an illegal search without reasonable suspicion or probable cause; the court subsequently denied Appellant's motion to suppress.

Here, Captain Paparo legally stopped Appellant after he disregarded several stop signs and asked Appellant to exit his vehicle for officer safety. *See Harris, supra*. Captain Paparo's observation of Appellant moving a large object in the back seat gave the captain a reasonable belief that his safety was in jeopardy, which justified his pat down of Appellant and the seizure of the loose oxycodone pills on Appellant's person. *See Mack, supra*. Further, under the totality of the circumstances, Captain Paparo had probable cause to believe Appellant's vehicle contained contraband, after he saw a mislabeled prescription pill bottle, a prescription pill bottle with the label ripped off, and recovered loose oxycodone pills from Appellant's person. *See Gary, supra*; *Spieler, supra*; *Lechner, supra*. Therefore, Captain Paparo legally searched Appellant's vehicle; and the court properly denied Appellant's motion to suppress. *See Hoppert, supra*. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/7/19