[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 22-10426

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

*versus*

THEODORE LEE WILLIAMS, II,

                                        Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:20-cr-00353-SCB-AAS-1

————————————

Before JORDAN, BRANCH, and TJOFLAT, Circuit Judges.

PER CURIAM:

Theodore Williams, II appeals his conviction for being a felon in possession of a firearm. He argues that the District Court erred in denying his motion to suppress evidence obtained in the search of his vehicle after a traffic stop. First, he asserts that the District Court clearly erred in finding that he was nervous, walked toward the officer, and attempted to distance himself from his car. Second, he asserts that the officer's attempt to immediately hand-cuff him violated his Fourth Amendment protection against unlawful searches and seizures. Finally, he argues that any evidence obtained from his vehicle thereafter was fruit of the poisonous tree. Finding no error, we affirm Williams's conviction.

## I.

On November 19, 2020, a grand jury in the United States District Court for the Middle District of Florida indicted Theodore Williams, II on one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1).[1] Williams, through counsel,

---

[1] Section 922(g) reads, in pertinent part: "It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition." The Indictment indicates that Williams had previous convictions for possession of cocaine with intent to sell, carrying a concealed firearm, robbery, and

filed a motion to suppress the search of his vehicle, arguing that (1) the traffic stop was invalid; (2) Williams's detention amounted to a *de facto* arrest without probable cause; and; (3) the search of the vehicle was unconstitutional. The Government responded, arguing that the officers lawfully arrested Williams and that Williams consented to the search of the vehicle.[2]

The District Court held an evidentiary hearing on the motion to suppress. Pablo Enriquez and Jason Otis, both deputies with the Hillsborough County Sheriff's Office (the "HCSO") Street Crimes Unit at the time of Williams's arrest, testified for the Government. Williams's attorney did not put on any witnesses. Below are the events of Williams's traffic stop, detention, arrest, and search, as articulated in the deputies' testimony.

The goal of the HCSO's Street Crimes Unit is to serve as a proactive law enforcement unit that detects and deters crime and saturates high crime areas. The unit is made up of both undercover deputies in plain clothes with unmarked cars and uniformed deputies in marked patrolled cars. On May 28, 2020, the evening of

---

being a felon in possession of a firearm, as well as two aggravated battery with a deadly weapon convictions. ]

[2] Williams's attorney filed an amended motion to suppress. The Government's response was to Williams's *original* motion to suppress. The Government did not respond to the amended motion, choosing instead to allow its original response to serve as a response to the amended motion as well.

Williams's arrest, Deputy Enriquez was in plain clothes and drove an unmarked car.

Because Deputy Enriquez was undercover and in an unmarked car, if he saw any crime, including traffic infractions, his role was to radio the uniformed units in the area for them to conduct the traffic stop. According to Deputy Enriquez's testimony, on the evening of May 28, 2020, he saw Williams traveling east on 124th Avenue East, approaching 15th Street North. He observed Williams's car approach the marked stop sign, fail to stop, run the stop sign, and make a right turn onto 15th Street North. Deputy Enriquez radioed his observations to Deputy Otis, who was a uniformed Street Crimes Unit deputy driving a marked car in the area, as was common practice. He maintained a visual on Williams's car until Deputy Otis pulled behind the car to initiate the traffic stop. Because Deputy Otis was alone in his patrol car, when Otis and Williams turned into Teresa's Food Store (the "Convenience Store"), Deputy Enriquez parked across the parking lot in case Deputy Otis needed assistance.

Both Deputy Enriquez and Deputy Otis testified that, upon pulling into the Convenience Store, Williams got out of his car and walked back towards Deputy Otis's car. Both deputies indicated that, based on their experience, if someone immediately exits their car they are either likely to flee on foot or they do not want the officer near the car or the window for some reason. Deputy Otis testified that Williams appeared to be very nervous and that he decided to detain Williams in handcuffs for safety purposes while he

conducted the traffic stop because Otis was alone, Williams was acting nervous, had exited the vehicle, and was distancing himself from it. Deputy Otis told Williams he was going to detain him and grabbed his right wrist to put it behind his back and handcuff him, at which point Williams attempted to flee on foot; Deputy Otis grabbed his shirt, and Williams and Otis fell to the ground. Deputy Otis testified that Deputy Enriquez—whom he did not know was on the scene—then assisted him in subduing Williams and arresting him for resisting arrest.[3] Otis then shined his flashlight into the car to make sure there was nobody else in the vehicle who could harm him.

Deputy Otis conducted a search of Williams subsequent to his arrest. He found a blue package containing what he suspected—based on his experience—was cannabis. After the search, Deputy Otis took Williams to the back of his patrol car. On the way to the patrol car, Deputy Otis testified that Williams was very nervous, saying that he did not want to go back to prison, and asked Deputy Otis to go get his phone from the car and let him call his mom and his girlfriend. According to Otis, he went up to the still-running vehicle, opened the door, and turned off the ignition. He smelled what he believed to be cannabis. He saw Williams's phone

---

[3] Deputy Enriquez's testimony confirms this sequence of events. Once Deputies Enriquez and Otis handcuffed Williams, other uniformed deputies arrived and Deputy Enriquez returned to his undercover vehicle, ending his involvement; Deputy Enriquez did not—at any point—go into Williams's car, nor did he see Deputy Otis do so.

on the floor, plugged in to a charging cable. And in plain view on the floor mat, right next to Williams's phone, was a firearm.[4]

At the close of the evidentiary hearing, the District Judge stated:

> As far as detention, there's clearly nothing wrong with the detention [ ]. [Williams] does get out of the car. And we can see him getting out . . . quickly, not slowly, but quickly walking to the rear of the car. Otis testified that . . . from his experience, that was suspicious, that [Williams] might be going to run, that he wanted him to stay away from the vehicle, and that he appeared nervous, and that—for his own safety, [he] detained him. . . . I don't think there's anything wrong with that detention. And then, obviously, once he detains him and he runs, then he . . . arrest[ed] him for resisting arrest without violence.

Evid. Hr'g Tr., Doc. 129 at 100. With respect to the search, the District Court stated that Deputy Otis had consent, and that even if he did not have consent, based on the totality of the circumstances he would have had probable cause. The Court commented that the defense consisted of "suspicions on top of suspicions on top of suspicions." *Id.* at 101.

---

[4] According to Deputy Otis's testimony, he did not have to touch anything in the car, aside from the door, to get to Williams's phone and he did not have to touch or move anything in the car to see the gun on the floorboard.

The District Court entered a written order denying the motion to suppress.  The Court found that Williams's first argument—that there was no traffic infraction and thus the traffic stop was invalid—lacked merit because Deputy Enriquez credibly testified that he witnessed Williams run the stop sign and there was simply no evidence to the contrary.  With respect to the lawfulness of Deputy Otis's attempt to detain Williams, the District Court held that it fell within the scope of a valid *Terry* stop and it was reasonable under the circumstances to provide for officer safety and to prevent Williams from leaving the scene.  That Otis could have used other means to detain Williams but chose to use handcuffs is irrelevant, because while he could have used other methods he was not required to.  When Williams attempted to flee the scene, Deputy Otis had probable cause to arrest him under Fla. Stat. § 843.02.[5]

As for the lawfulness of the automobile search, the District Court found that the search was lawful under several exceptions to the Fourth Amendment's warrant requirement.  First, the Court held that Williams voluntarily consented to the search.  Second, the District Court held that the search was valid under the automobile exception to the warrant requirement, as the vehicle was readily mobile and there was probable cause to believe that it contained contraband.

---

[5] According to Florida law:  "Whoever shall resist, obstruct, or oppose any officer, . . .without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree."  Fla. Stat. § 843.02.

Following the denial of his motion to dismiss, Williams opted for a bench trial. He was found guilty of one count of felonious possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and sentenced to 57 months' imprisonment and 36 months of supervised release. Williams filed this timely appeal, challenging the District Court's factual findings, the constitutionality of Williams's detention, and the evidence obtained from the search of the car.

## II.

Because rulings on motions to suppress evidence present mixed questions of law and fact, we review the District Court's factual findings for clear error and its application of the law to the facts *de novo*. *United States v. Lewis*, 674 F.3d 1298, 1302–03 (11th Cir. 2012). The facts are construed in favor of the party that prevailed below, here the United States, and we afford substantial deference to the factfinder's explicit and implicit credibility determinations. *Id.* at 1303. We will accept the District Court's credibility determination "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Holt*, 777 F.3d 1234, 1255 (11th Cir. 2015) (quotation marks omitted). Generally, evidence obtained by unconstitutional means is inadmissible because it is "the fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 488, 83 S. Ct. 407, 417 (1963).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated,

and no warrants shall issue, but upon probable cause." U.S. Const. amend. IV. A police officer may lawfully detain someone without a warrant if he has reasonable suspicion that the person has participated in or is about to participate in criminal activity, which includes minor traffic violations. *United States v. Campbell*, 26 F.4th 860, 880 (11th Cir. 2022) (en banc), *cert. denied*, 143 S. Ct. 95 (2022).

When an officer has already lawfully detained a driver, an additional intrusion into the driver's personal liberty is justified if it is outweighed by legitimate concerns for the officer's safety. *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S. Ct. 330, 333 (1977) (finding that, during a traffic stop, the additional intrusion of ordering a driver to get out of the car was *de minimis*). Officer safety is a "legitimate and weighty" justification, and traffic stops are not necessarily any less dangerous than other types of confrontations. *Id.* at 110, 98 S. Ct. at 333; *see also United States v. Gibbs*, 917 F.3d 1289, 1297 (11th Cir. 2019) ("[O]ur courts have repeatedly recognized the danger inherent in traffic stops, . . . and the concomitant need to exercise unquestioned command of the situation." (quotation marks omitted)), *abrogated on other grounds by Campbell*, 26 F.4th at 880 n.15.

"[W]hen the totality of circumstances indicate that an encounter has become too intrusive to be classified as a brief seizure, [or detention,] the encounter is an arrest and probable cause is required." *United States v. Espinosa-Guerra*, 805 F.2d 1502, 1506 (11th Cir. 1986). A reviewing court must give due weight to the officer's experience when examining the totality of the

circumstances. *United States v. Briggman*, 931 F.2d 705, 709 (11th Cir. 1991). In determining whether a detention amounts to a *de facto* arrest, we consider, in relevant part, the law enforcement purposes served by the detention and the scope and intrusiveness of the detention. *United States v. Acosta*, 363 F.3d 1141, 1146 (11th Cir. 2004). Handcuffing does not automatically convert a *Terry* stop into a *de facto* arrest requiring probable cause. *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989). Notably, we have "long concluded that it is reasonable for officers to use handcuffs to protect themselves during an investigative detention." *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1306 (11th Cir. 2006).

Here, Deputy Otis's attempt to handcuff Williams and detain him for the duration of the traffic stop was a valid detention and not a *de facto* arrest. Based on his experience, Deputy Otis testified that when people exit their vehicle quickly on traffic stops, there is a high likelihood they will flee on foot. He further testified that Williams appeared nervous and was trying to distance himself from the vehicle. Because Deputy Otis believed himself to be the only officer on the scene, and because Williams exited the vehicle quickly, appeared nervous, and appeared to be distancing himself from the vehicle, Deputy Otis made the decision to detain Williams for safety reasons. This is a legitimate justification.

The District Court's factual findings were not clearly erroneous. The record does not contradict the Court's determination that the officer's testimony was credible—it corroborates it. We

certainly cannot say the testimony of Deputies Enriquez and Otis is "contrary to the laws of nature, or [ ] so inconsistent or improbable on its face that no reasonable factfinder could accept it." *Holt*, 777 F.3d at 1255. Under the totality of the circumstances, Deputy Otis's attempt to use handcuffs on Williams for safety reasons was reasonable and did not turn the detention into a *de facto* arrest. When Williams then attempted to flee this lawful detention, Deputy Otis validly arrested him pursuant to Florida law. Because the arrest was valid, so too was the search incident to arrest.

As for the search of the vehicle, that search was valid under several theories. Specifically, Deputy Otis had consent to search the vehicle. Williams asked him to get his phone and asked several times to make a phone call. Otis did not exceed the scope of that consent when he entered the vehicle. He was lawfully present in the vehicle to get Williams's phone, and the gun was in plain view next to the phone.

Further, the automobile exception applies. If a car is (1) readily mobile and (2) probable cause exists to believe it contains contraband, a warrantless search does not violate the Fourth Amendment. *United States v. Watts*, 329 F.3d 1282, 1285 (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S. Ct. 2485, 2487 (1996) (per curiam)). When Deputy Otis opened the car door to retrieve Williams's cell phone and turn off the ignition, he smelled marijuana. The fact that the vehicle was running indicates that it was readily mobile. The smell of the marijuana, combined with

the seizure of what appeared to be marijuana from Williams upon search of his person, created probable cause.

Because there was a valid detention, there was no unlawful arrest and thus no constitutional violation. The seized evidence was therefore not fruit of the poisonous tree, and the Court did not err in denying the motion to suppress. Accordingly, we affirm Williams's conviction.

**AFFIRMED.**